ARKANSAS MOTOR COACHES, LTD. *v.* WILLIAMS.

4-5048

Opinion delivered April 25, 1938.

*J. W. Wrape, Miles & Amsler* and *Huie & Huie,* for appellants.

*Boyd Tackett* and *J. H. Lookadoo,* for appellee.

MEHAFFY, J.   This action was begun in the Clark circuit court by appellee against the àppellants, Arkansas Motor Coaches, Ltd., and P. R. Todd to recover damages for injuries caused by a collision between appellee's automobile and a bus belonging to Arkansas Motor Coaches,

Ltd., near Hot Springs, Arkansas, on July 17, 1937. Appellee alleged in his complaint that he was 22 years of age and was driving a Plymouth sedan towards Hot Springs in a careful and prudent manner, lights burning, and he was on the right side of the highway and his car was under control; that he met one of appellant's buses coming south driven by P. R. Todd, one of the appellants; that the bus came around a curve at a reckless rate of speed and came over on appellee's side of the highway, ran into appellee's car, knocking it over; that appellee's left arm was crushed and mangled and had to be amputated just above the elbow; that he received other injuries causing concussion of the brain, upsetting his entire nervous system; appellee still expectorates blood, his spine and back were injured, the muscles and tendons being torn loose; that he has spent considerable sums for doctors' bills, is permanently injured, and prays for judgment in the sum of $50,000.

The appellant, Arkansas Motor Coaches, Ltd., filed separate answer denying all the material allegations in the complaint; denied that the bus was on the wrong side of the highway, and denied the injuries and damages alleged by appellee. It stated that the collision was due to appellee's negligence in driving his car without lights on the wrong side of the highway, and pleaded contributory negligence. By way of cross-complaint appellant alleged that its bus was damaged by reason of the negligence of appellee in driving on the wrong side of the highway without lights at a reckless rate of speed and asked for damages in the sum of $500.

P. R. Todd, appellant, filed separate answer denying all the material allegations of the complaint and pleading contributory negligence.

Appellee filed answer to the cross-complaint denying all the material allegations in said cross-complaint.

The evidence introduced in behalf of appellee was to the effect that on July 17, 1937, appellee was driving on highway No. 7 going to Hot Springs; that he was driving a plymouth sedan; that appellee had gone to Hot Springs to see a lady friend; she was not there and he then went

to the Queen Mary boat between Arkadelphia and Hot Springs and talked to Miss Marie Crittendon and asked her about the lady he had gone to Hot Springs to see; that when the collision occurred appellee was going north towards Hot Springs on the right-hand side driving about 30 or 35 miles an hour; that he noticed an approaching car and the bus coming around the car; he turned his car to the right and at the time could feel the bumping and knew he was off of the pavement, and that is the last he knew; he was unconscious; that at the time of the collision the bus was two-thirds on appellee's side of the road and the bus was traveling between 65 and 70 miles an hour; the first thing that appellee remembered after the collision he was in an automobile, and the next thing Dr. Tribble was trying to get him to consent to amputate his left arm; his left arm was amputated about three inches above the elbow; eleven stitches were taken in his face, and his back and chest injured and the side of his head; he occasionally spits up blood, but did not do this before the accident; his spine troubles him all the time; his right wrist was sprained and is not completely well; has not had a restful moment since the accident and has to take sedatives and aspirin; never was drunk before the injury; was in the hospital sixteen days; his left arm is the one that is off; was left-handed; wrote with his left hand; worked for the Ford Motor Company in Chicago and made $55 a week; he had finished high school; medicine and hospital bills were $291.

Appellee's evidence was corroborated by Dr. James H. Wells, Mrs. Cordia Reed, a registered nurse, and Miss Clytie McMillian, another registered nurse, and several other witnesses. Dr. Wells and the nurses and several other witnesses who were with appellee immediately after the accident testified that he was not drinking and they could not smell whiskey on his breath.

The evidence introduced on behalf of appellants tended to show that the collision was caused by appellee's negligence; that he was driving rapidly and without

lights, although the witnesses for appellant contradicted each other about the lights.

The case was tried by a jury and the jury returned a verdict for $20,000. This appeal is prosecuted to reverse said judgment.

Appellants' first contention is that the court erred in refusing to give its instruction No. 1. This instruction directed the jury to return a verdict for appellants. It was based on the theory that the evidence is insufficient to support the verdict. The evidence, as we have already said, is in conflict, but the clear, positive statements of appellee and his witnesses are to the effect that it was wholly the fault of appellants that caused the collision; that appellee was on the right side of the road, and in fact, turned his car so far to the right that he got on the shoulder, and that the bus came over on appellee's side of the road at a reckless rate of speed and struck appellee's car. The testimony introduced by appellants is in conflict with this.

We recently held: "We there said that we would not reverse a judgment because the verdict upon which it was based was so clearly against the weight of the evidence as to shock the sense of justice of a reasonable person, and that we could reverse a judgment for lack of testimony only in cases where there was no substantial evidence to support it. We may, therefore, determine only whether there is any testimony of a substantial character to support the verdict, and we must in passing upon that question, in conformity with settled rule of practice, give to the testimony tending to support the verdict its highest probative value along with all inferences reasonably deducible from the testimony." *Coca-Cola Bottling Co.* v. *Hill,* 192 Ark. 154, 90 S. W. 2d 210; *Chalfant* v. *Haralson,* 176 Ark. 375, 3 S. W. 2d 38.

Again this court recently said: "The jury's verdict is conclusive here on questions of fact, even though we might believe that the preponderance of the evidence was the other way. This court does not pass on the credibility of witnesses nor the weight to be given to their

testimony.'' *C. R. I. & P. Ry. Co.* v. *Britt,* 189 Ark. 571, 74 S. W. 2d 398.

This court has held in a long line of cases that if there is any substantial evidence to support the finding of a jury, its verdict will not be disturbed by this court on account of the insufficiency of the evidence.

The Supreme Court cannot substitute its judgment for a jury's finding supported by competent evidence. *B. & O. Rd. Co.* v. *McGill Bros. Rice Mill,* 185 Ark. 108, 46 S. W. 2d 651; *Richards* v. *McCall,* 187 Ark. 61, 58 S. W. 2d 432; *Mo. State Life Ins. Co.* v. *Holt,* 186 Ark. 672, 55 S. W. 2d 788; *S. W. Bell Tel. Co.* v. *Balesh,* 189 Ark. 1085, 76 S. W. 2d 291; *M. P. Rd. Co.* v. *Sellers,* 188 Ark. 218, 65 S. W. 2d 14; *Sparkman Hdw. Lbr. Co.* v. *Bush,* 189 Ark. 391, 72 S. W. 2d 527; *Dixie Bauxite ·Co.* v. *Webb,* 187 Ark. 1024, 63 S. W. 2d 634.

Many other cases might be cited in support of the rule, and this court must accept as final the jury's conclusion as to the credibility of the witnesses and the weight to be given to their testimony, and if appellee's evidence is substantial, then the fact that it is contradicted by appellants' witnesses, or the fact that we might think it was against the preponderance of the evidence, ·does not justify us in setting aside the verdict.

It is next contended that the court erred in refusing to declare a mistrial because of the remarks of appellee's attorney. Appellee offered to introduce a picture of the body of the bus, and the evidence showed that it was an exact picture of the right side of the bus. Appellants objected to the introduction of the picture and stated as its reason for the ·objection that it was taken of the side of the bus where no injury was shown, and that it was not a true representation of the bus, and had no bearing on the case and would be of no evidential value as throwing any light on the accident; that it would leave the wrong impression because it was the side of the bus that was not in contact and was not injured, and it is misleading. The court thereupon sustained the objection.

Attorney for appellee stated that the purpose of introducing the picture was that it says on the side:

"Arkansas Motor Coaches, Ltd., Inc., the Shortest and Fastest Route Through Arkansas." The attorney said that he wanted to show that they advertise that they run fast. The court not only sustained the objection, but told the jury that it must not consider any remarks or statements made with reference to the picture, which the court excluded from the record. After this statement by the court the appellants asked the court to declare a mistrial. If it had been incompetent, and the remarks of the attorney had been improper, certainly the instruction of the court would have cured the error.

It is next contended by the appellants that the court erred in excluding witness Schweer's testimony. The attorney for appellants asked the following question in the examination of Schweer: "You saw this dirt and assumed that this came around. This mark was such that this car would have made this kind of a mark?" Witness answered, "Yes, sir." "Q. Is that your opinion?" Thereupon the court said: "He can't give his opinion. Just let the witnesses testify to what they saw." Attorney for the appellant said: "But this is where the injury occurred and the car and the bus were there." Whereupon the court said: "That is a question for the jury and not for the witness." The appellant objected to the ruling of the court.

In the further examination of this witness, in answer to a question by appellants' attorney, he stated: "Left front fender had been completely stripped off and the running board and left rear fender had been torn loose and mangled like it had side-swiped something." The attorney for appellee objected to the answer of the witness, and the court said: "Which car side-swiped the other is for the jury to say." This was objected to by the appellants.

There was no error in the ruling of the court, but appellants state that the court, in making this statement, in substance told the jury that it should disregard that part of witness' statement which said "like it had side-swiped something." In this connection appellants call attention to the case of *Cahill* v. *Bradford,* 172 Ark. 69,

287 S. W. 595. In the case referred to the witness was testifying about skid marks made by the car, and of course testifying as to the skid marks was not objectionable, and moreover the witness got there while the cars were in the same position, had not been changed after the injury, and the court said the witness could of course see and know the car had skidded, and the place from which it began to skid and the place where it stopped. The court said that witness' statement that he saw the skid marks where the car had been jammed or swiped sideways was not necessarily a matter of opinion. The court further stated that as a part of the same answer he testified to other matters; but while the court held that the testimony of the witness in that case was admissible, it stated:

"As a general rule, witnesses who are not required to testify as experts must state facts, and not conclusions." The court further stated, in describing the situation and conditions under which an expert might give his opinion: " 'First, that the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and, second, that the facts upon which witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding.' According to this rule, opinion evidence is not admissible when the fact is susceptible of being adequately exhibited to the jury in the ordinary way." The court also said, as to the testimony objected to in that case that there was involved in the answer a mixture of fact and opinion, and that the portion of the answer which was objected to as opinion is a part of the description of the condition which witness saw.

As a general rule witnesses must testify to facts, and not give their opinions. The jury determines from the facts testified to, as the court said, which car sideswiped the other. We think there is nothing in the case referred to that supports the contention of appellants.

It is next contended by appellants that the court erred in admitting Tackett's testimony. Tackett was one

of the attorneys in the case and was not put under the rule. They also objected to his testimony because he was permitted to testify about tracks that he saw. Trial courts necessarily have large discretion in managing and controlling the proceedings at the trial, and it has been repeatedly held that the court has discretion in determining what witnesses may be put under the rule and what witnesses, if any, may be excused from the rule. There was no error in this ruling of the court.

The appellants next contend that the damages awarded are excessive, and they call attention to some cases where verdicts have been reduced; but they state that each case coming before this court must be decided according to facts as shown by the record. It is argued that there is no evidence other than the bare statement of appellee as to his injuries, but admit that it is true that he lost his arm and necessarily suffered some pain.

Appellee is a young man twenty-two years of age, and the evidence shows that his arm was crushed and injured until it had to be amputated above the elbow; that he suffered other injuries, and he not only testified at length about his injuries and suffering, but Dr. Wells, who saw him, testified that he seemed weakened from the accident, and the second time he saw him his nervous condition was bad. The doctor thought he had sustained some injury to his brain, causing a mental melancholy state.

The amount of a verdict in a personal injury case should be sufficient to compensate the injured party not only for his physical suffering, but for all the pain and mental anguish he suffered because of the injury. This young man must go through life injured and maimed. His expectancy is more than forty years, and the amount of the damages awarded him appears to be very reasonable.

"There is no rule by which we can measure damages for pain and suffering.

" 'Verdicts of juries are not set aside on account of the amount of recovery unless the amount is excessive. If the plaintiff was entitled to recover, and the amount

of the verdict was a fair compensation for the injuries complained of, the verdict of the jury should be permitted to stand.' " *Ward* v. *Blackwood,* 48 Ark. 396, 3 S. W. 624.

"The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering during the period of his disablement, and for such permanent injury and continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are insusceptible of pecuniary admeasurement, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury, the exercise of which must be governed by the circumstances and be based on the evidence adduced, the controlling principle being that of securing to plaintiff a reasonable compensation for the injury which he has sustained." *Coca-Cola Bottling Co. of Ark.* v. *Adcox,* 189 Ark. 610, 74 S. W. 2d 771; 17 C. J. 869, *et seq.*

It is the province of the jury not only to determine the question of liability, but to determine the amount of damages that the injured party is entitled to recover, and we have no right to disturb the verdict unless we can say it is not sustained by substantial evidence.

We find no error, and the judgment is affirmed.