RUDOLPH *v*. MUNDY.

5-883                                    288 S. W. 2d 602

Opinion delivered March 19, 1956.

*Wade & McAllister,* for appellant.

*Rex W. Perkins, E. J. Ball, Price Dickson* and *W. B. Putman,* for appellee.

PAUL WARD, Associate Justice.  On April 23, 1954 an accident involving three automobiles occurred on

Highway No. 16 a short distance west of the city limits of Fayetteville, Arkansas. Joe Mundy was driving his automobile east along said highway, and he had in the automobile with him La Wana Mundy, Betty Ann Mundy, and Rodney Mundy, a minor. Mrs. Marjory Holt Rudolph was driving her husband's automobile west on said highway, and just behind her, going in the same direction, was an automobile in which Mrs. Florence D. Cassidy was riding. When Mrs. Rudolph had reached a point on the highway where her home was situated just south of the highway, she [allegedly] carelessly and without giving any warning turned her car to the left in order to enter the driveway to her home. At this instant the automobile driven by Joe Mundy struck Mrs. Rudolph's automobile and then struck the automobile in which Mrs. Cassidy was riding. There is no contention by any one that Mrs. Cassidy was guilty of any negligence.

As a result of the collision Mrs. Cassidy was severely injured, Joe Mundy and the above named occupants of his car were injured, Mrs. Rudolph received a shock, and all three of the automobiles were damaged. Three separate and distinct suits were filed and docketed as set out below.

Suit No. 2362. Joe Mundy filed suit against E. L. Rudolph and Marjory Holt Rudolph alleging negligence on the part of Marjory Holt Rudolph [driver of the automobile] in making a left turn across the highway without giving any signal and prayed for $1,250 damage to his automobile and for $2,500 for injury to himself. The Rudolphs entered a general denial and pleaded contributory negligence on the part of Joe Mundy. They also filed a cross-complaint against Joe Mundy alleging that he was negligent in driving at an excessive rate of speed and in failing to yield the right of way and that the automobile in which they were riding, belonging to Mr. Rudolph, was thereby damaged to the extent of $500. A jury verdict resulted in a judgment against Mrs. Rudolph in favor of Joe Mundy in the

amount of $2,500. The jury failed to return any verdict in favor of Mrs. Rudolph.

Suit No. 2364. La Wana Mundy, Betty Ann Mundy and Rodney Mundy, a minor by next of friend, who were riding in the automobile with Mr. Joe Mundy at the time of the accident, filed suit against Mr. and Mrs. Rudolph making substantially the same allegations of negligence on the part of Mrs. Rudolph, asking for damages for injuries to the first two occupants in the amount of $2,500 and $1,000 for the minor. The Rudolphs made the same denial and plea of contributory negligence and filed the same cross-complaint as in the above case with the exception that they alleged that Joe Mundy and the other occupants of his car were on a joint mission. The jury returned a verdict against Mrs. Rudolph in favor of the minor in the sum of $100 and for $250 in favor of each of the other two, and rendered no judgment in favor of Mrs. Rudolph on her cross-complaint.

Suit No. 2418. Mrs. Florence D. Cassidy filed suit against Mrs. Rudolph setting forth the alleged acts of negligence on the part of Mrs. Rudolph, praying for damages for personal injuries in the amount of $50,000. To the above complaint Mrs. Rudolph entered a general denial, pleaded contributory negligence on the part of Mrs. Cassidy [this allegation of contributory negligence was later abandoned], and filed a cross-complaint. In this cross-complaint Mrs. Rudolph alleged that Joe Mundy's negligence caused or contributed to the accident, alleging that she received injuries in the nature of a shock as a result thereof, asking that Joe Mundy be made a party defendant, and prayed for judgment against Joe Mundy in the sum of $500. On this cross-complaint summons was issued and served on Joe Mundy. On April 19, 1955 Joe Mundy filed an answer to the above cross-complaint containing a general denial of negligence and stated that the collision was the result of the negligence of Mrs. Rudolph, asking that the said cross-complaint be dismissed.

On June 25, 1955 Mrs. Rudolph filed an "Amended Answer and Cross-Complaint," denying the allegations of negligence, pleading contributory negligence, and by way of amended cross-complaint against Joe Mundy alleged in substance; the injuries sustained by the plaintiff, Mrs. Cassidy, were solely caused by the reason of the negligence of Joe Mundy in the operation of his automobile at the time of the collision [setting out several alleged acts of negligence on the part of Joe Mundy], and that in the event Mrs. Cassidy should recover any judgment against her [Mrs. Rudolph] because of the alleged injuries, then and in that event, Mrs. Rudolph will be entitled to judgment against Joe Mundy for contribution to the amount of one-half the amount of damages and costs that might be awarded to Mrs. Cassidy. The trial court, in effect, refused to allow Mrs. Rudolph to present her claim for contribution against Joe Mundy under the above amended cross-complaint. A jury returned a verdict against Mrs. Rudolph in the amount of $30,000, and made no allowance to Mrs. Rudolph on her claim against Joe Mundy for the shock which she is alleged to have received.

The above mentioned three suits were consolidated for the purpose of trial.

Appellant, Mrs. Rudolph, makes two principal contentions on this appeal, viz: (a) The judgment of the lower court should be reversed because she was not allowed to prosecute her claim against Joe Mundy for contribution, and (b) The judgments rendered against her are excessive.

(a) In support of her right to present her claim against Joe Mundy for contribution in this action, appellant relies on the provisions of Act 315 of 1941. Section 7(1) of said act provides that when a defendant, such as Mrs. Rudolph here, desires to have contribution against a joint tort-feasor who is not a party to the suit he must have a summons issued for and served on the joint tort-feasor. It is admitted here that no such summons was issued or served on Joe Mundy after

Mrs. Rudolph filed her cross-complaint in Suit No. 2418 against Joe Mundy.

It is contended however by appellant that under the facts of this case it was not necessary to have a summons issued and served on Joe Mundy. The reason for this, says appellant, is that, as stated above, Mrs. Rudolph had theretofore filed a cross-complaint against Joe Mundy to recover injuries for the shock she received and had caused a summons to be issued and served on Joe Mundy, and Joe Mundy had entered his appearance and filed an answer to that cross-complaint. Therefore, appellant says, since Joe Mundy was already made a party to Suit No. 2418 and had entered his appearance, it was not necessary that service should be again issued against him in connection with the cross-complaint asking for contribution.

We cannot agree that this case must be reversed for the reason above assigned. In the first place, the right of Mrs. Rudolph to have contribution against Joe Mundy in this action under the provisions of said Act 315 is a permissive right and it does not exclude her right to seek contribution in a separate suit if she so desires. We think this interpretation of the Act is clear from the wording of the Act itself. The first sentence in Section 7(1) says that a defendant *"may move. . . for leave"* to file a complaint upon a joint tort-feasor not a party to the action in order to effect contribution. The first words in the sentence that follows begin with *"If the motion is granted* and the summons and complaint are served . . ."* the joint tort-feasor shall make a defense, etc. From this language we conclude that Act 315 meant to give the trial court a certain measure of discretion in allowing or disallowing the kind of procedure appellant seeks here to invoke. The trial court in this instance was invested with that discretion even though it be conceded for the purpose of this opinion that no further service on Joe Mundy was necessary in this case.

Nor can we say that the trial court abused its discretion in refusing to allow Mrs. Rudolph to prosecute

her claim in this particular case for contribution against Joe Mundy. As noted above, three separate suits had been consolidated for trial, and the question which appellant raises here was not brought to the attention of the trial court until the attorneys were making their opening statements in the cases. Since the trials were already under way and since appellant had not previously sought the court's permission to have Joe Mundy made a party to case No. 2418, we feel that the court was justified in ruling as it did, and especially so since appellant lost no substantive right by the adverse ruling.

Subsection (1) of Section 7 of said Act 315 is distinguished from subsection (3) of said Section as it applies to this case. Under the latter subsection, if Joe Mundy had been made a party defendant by Mrs. Cassidy, then Mrs. Rudolph would have been compelled to prosecute her claim for contribution in Suit No. 2418 or she would have lost it.

We cannot agree with appellees' contention that, as a matter of law, Mrs. Rudolph's right to ask for contribution against Joe Mundy was cut off by the verdicts of the jury in the several consolidated cases. It is true that in case No. 2362 Mrs. Rudolph pleaded contributory negligence on the part of Joe Mundy and that the jury rendered a verdict in favor of Mundy. It is also true that such a verdict can be explained only on the assumption that the jury found no negligence on the part of Joe Mundy. However we cannot say, as a matter of law, that this finding precludes a finding by the jury that Joe Mundy's negligence might have caused or contributed to the injuries received by Mrs. Cassidy. It is not illogical to say that Joe Mundy was guilty of no negligence in colliding with Mrs. Rudolph's automobile but might have been negligent in colliding with the automobile in which Mrs. Cassidy was riding, or at least in injuring Mrs. Cassidy to the extent that she was injured. Mrs. Rudolph alleges that Joe Mundy negligently failed to maintain proper brakes on his automobile; that he negligently failed to apply said brakes when he should have done so; that Joe Mundy was driving in a thickly populated residential section at an unlawful, ex-

cessive, and highly dangerous rate of speed under the conditions then existing — 65 miles per hour; that he negligently failed to keep a proper lookout for other automobiles, and; that Joe Mundy negligently failed to use ordinary care to keep his automobile under proper control. It appears to us that a jury would not necessarily be inconsistent in finding that Joe Mundy's negligence caused or contributed to the injuries [or the extent thereof] suffered by Mrs. Cassidy and at the same time find that Mrs. Rudolph's negligence [in turning suddenly across the highway in front of Joe Mundy] was the sole and proximate cause of Joe Mundy's injuries and that his negligence in no way contributed to his collision with Mrs. Rudolph's car. Not only so but this court has held that in such instances a jury's verdict need not be consistent. In the case of *Brown* v. *Parker,* 217 Ark. 700, 233 S. W. 2d 64, three automobiles were involved in an accident. In a suit by automobile No. 1 against automobile No. 2, in which No. 2 pleaded contributory negligence, the jury rendered a verdict for No. 1. Then automobile No. 3 sued and recovered judgment against both automobile No. 1 and automobile No. 2. On appeal to this court appellant insisted that the jury's verdict was inconsistent, and this court said: "The answer to this argument must be that the law imposes no requirement of consistency upon jurors hearing separate cases which are consolidated for purposes of trial. If such separate cases were being tried separately, by different juries, there would be no assurance of consistency in the verdicts, and no greater assurance of consistency is insisted upon when one jury tries both cases together."

(b) It is earnestly insisted by appellant that the jury's verdict in the amount of $30,000 in favor of Mrs. Cassidy is excessive and should be reduced by this court. Mrs. Cassidy was 54 years of age when she was injured. She was confined in a hospital as a bed patient for a period of 56 days, at the end of which time she was able to walk on crutches. The hospital bill amounted to $1,-132.15 and her doctor bills amounted to $922, not counting smaller amounts for anesthetic, ambulance and drugs.

Since leaving the hospital she has expended approximately $12.50 each month for drugs. Her life expectancy was 18.48 years at the time of the collision.

She suffered a compound fracture of the right femur and a fracture of the left knee, and she suffered cuts and bruises about her face, forehead and body. The testimony shows that bone fragments were in the knee joints and wrist, resulting in arthritis in the joints. It is further shown that she suffered much pain. It was necessary to place a nail through the tibia of the right leg to which a 20 pound weight was attached for most of the time she was in the hospital. It was necessary for Mrs. Cassidy to return to the hospital the second time for a period of 9 days for the purpose of removing the bone fragments from her right knee, resulting in the knee becoming enlarged and stiff. Medical testimony indicated that Mrs. Cassidy had approximately 50% partial permanent disability to the right knee, 5% partial permanent disability to the left knee, and 21% partial permanent disability to the body as a whole. It is possible that her healing period has ended and medical testimony indicates that she may improve or may get worse.

It is never possible in this kind of a case for any one to say with complete satisfaction to what extent compensation should be allowed. In this instance the jury heard all the testimony and had ample opportunity to observe Mrs. Cassidy, and we cannot confidently say that the judgment is excessive. As was said in the case of *Coca-Cola Bottling Co. of Arkansas* v. *Adcox,* 189 Ark. 610, 74 S. W. 2d 771, a claimant ''is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary admeasurement, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury . . .'' We also said in *Arkansas Motor Coaches, Ltd.* v. *Williams,* 196 Ark. 48, 116 S. W. 2d 585, that: ''There is no rule by which we can measure damages for pain and suffering.''

In connection with the contention that the jury's verdict was excessive, appellant says that certain testimony regarding Mrs. Cassidy's earning capacity was improperly introduced. We do not think the record supports appellant's contention in this matter. After Mrs. Cassidy had testified that she had a top rating with the Soil Conservation Service as senior secretary, she was asked if she had recently had an offer from that agency. Appellant objected to this question on the ground that it was self serving. Mrs. Cassidy then stated she had a letter from her immediate boss offering her a job. Appellant objected on the ground that the letter was the best evidence. Following this the letter was offered in evidence and marked Exhibit 6, though it does not appear in the record. This was not a self serving declaration on the part of Mrs. Cassidy and her testimony was properly introduced.

In addition to the above appellant contends that it was error for the trial court to refuse her request for a special verdict. We do not agree with this contention.

Just before the jury was ready to retire appellant presented to the court a special verdict. This special verdict called for the jury to answer 25 specific questions. The trial judge, in refusing to submit these questions to the jury, made this statement: ''The jury is ready to retire now and we don't have time to go over them.'' Under the circumstances and under the statute providing for special verdicts we cannot say the court abused its discretion. Special verdicts are provided for by Act 336 of 1953. Section 2 of the Act states: ''A court may require a jury in a civil action to return only a special verdict in the form of a special written finding upon each issue of fact.'' In the same section it is provided that: ''The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.'' In the case of *Robertson* v. *Universal C. I. T. Credit Corp.*, 224 Ark. 293, 272 S. W. 2d 825, this court, in applying the above mentioned Act, stated: ''The Act 336 still leaves discretion

to the Trial Judge as to whether to submit the case to the Jury on a general verdict or on a special verdict or interrogatories.''

Affirmed.

Justices McFADDIN and ROBINSON concur.

Chief Justice SEAMSTER not participating.

ED. F. McFADDIN, Associate Justice (concurring). I concur in the result reached in this case; but I cannot and do not agree with some of the language contained in the majority opinion. To me it seems clear that Mrs. Rudolph's right to ask for contribution against Joe Mundy has been cut off by the verdicts of the Jury in the several consolidated cases; and, that being so, I think it is unnecessary for the opinion to contain any discussion about Mrs. Rudolph's right to still ask contribution against Mundy in a separate suit if she so desires.

This latter point—''contribution in a separate suit if she so desires''—is a most dangerous doctrine. Our Statute on joinder and consolidation of actions contemplates that all possible causes of action growing out of the affair in controversy, and all possible defenses, should be asserted in one suit. In this case Mrs. Rudolph cross-complained against Mundy and brought him into this action. With him in the case on her cross-complaint, the burden was on her to assert her claim for contribution as well as all other claims arising from this collision. The majority opinion, in saying that Mrs. Rudolph may still ''seek contribution in a separate suit if she so desires,'' is entirely at variance with the spirit of our Statute (§ 27-1301, Ark. Stats.).

But, notwithstanding all of the above, I concur with the result reached in this case because it is my considered opinion that the verdict of the Jury forecloses any claim of contribution by Mrs. Rudolph against Mundy. The majority opinion takes the allegations in Mrs. Rudolph's pleadings as evidence and from such builds a hypothetical case that Mundy was driving in a thickly populated residential district at 65 miles an hour. I find no evidence to

support all this hypothetical theory, and evidently the Jury also took a different viewpoint of the matter, when the verdict said that Mrs. Rudolph was not entitled to any judgment against Mundy. When the Jury found that Mrs. Rudolph was not entitled to a judgment against Mundy, then certainly the Jury found that Mrs. Rudolph was not entitled to any contribution against Mundy.

Finally, let it be remembered that this case arose prior to our new Comparative Negligence Statute.